JS 44 (Rev. 06/17)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

MELINDA S. DRAKE

**(b)** County of Residence of First Listed Plaintiff   CUMBERLAND
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
STEVEN HOWELL, ESQUIRE
619 BRIDGE STREET
NEW CUMBERLAND PA 17070, (717)-770-1277

## DEFENDANTS

EXPERIAN INFORMATION SOLUTIONS, INC. and EQUIFAX INFORMATION SERVICES, LLC

County of Residence of First Listed Defendant
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1  U.S. Government
Plaintiff

☒ 3  Federal Question
*(U.S. Government Not a Party)*

☐ 2  U.S. Government
Defendant

☐ 4  Diversity
*(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                                                    *and One Box for Defendant)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | Personal Injury | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' | Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | Liability | ☐ 368 Asbestos Personal Injury Product | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 340 Marine | Liability | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | **LABOR** | **SOCIAL SECURITY** | ☒ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | ☐ 360 Other Personal | ☐ 380 Other Personal Property Damage | ☐ 720 Labor/Management Relations | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | Injury | ☐ 385 Property Damage Product Liability | ☐ 740 Railway Labor Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | ☐ 362 Personal Injury - Medical Malpractice | | ☐ 751 Family and Medical Leave Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| | | | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Employee Retirement Income Security Act | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | | |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original Proceeding  ☐ 2 Removed from State Court  ☐ 3 Remanded from Appellate Court  ☐ 4 Reinstated or Reopened  ☐ 5 Transferred from Another District *(specify)*  ☐ 6 Multidistrict Litigation - Transfer  ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
Fair Credit Reporting Act 15 U.S.C. 1681 et seq.

Brief description of cause:
Violations of the Fair Credit Reporting Act 15 U.S.C. 1681 et seq.

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
**JURY DEMAND:** ☒ Yes  ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*
JUDGE _____   DOCKET NUMBER _____

DATE
09/13/2017

SIGNATURE OF ATTORNEY OF RECORD

### FOR OFFICE USE ONLY

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MELINDA S. DRAKE | : | Case Number |
| Plaintiff | : | |
| | : | |
| vs. | : | |
| | : | |
| EXPERIAN INFORMATION | : | |
| SOLUTIONS, INC. | : | CIVIL COMPLAINT |
| and | : | |
| EQUIFAX INFORMATION | : | |
| SERVICES, LLC | : | |
| Defendants | : | JURY TRIAL DEMANDED |

## COMPLAINT AND JURY DEMAND

**COMES NOW,** Plaintiff, Melinda S. Drake, by and through her undersigned counsel, Steven Howell, Esquire of the Howell Law Firm, complaining of Defendants as follows:

## INTRODUCTORY STATEMENT

1. Plaintiff, Melinda S. Drake, is an adult natural person and she brings this action for damages against Defendants for violations of the Fair Credit Reporting Act ("FCRA") 15 U.S.C. § 1681 *et sec., as amended.*

2. The United States Congress has found that the banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public's confidence, which is essential to the continued functioning of the banking system. An elaborate mechanism has been developed for investigating and evaluating the credit worthiness, credit standing, credit capacity, character and

general reputation of consumers. Consumer reporting agencies have assumed a vital role in assembling and evaluating consumer credit and other information on customers. There is a compelling need to ensure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality and a respect for the consumer's rights.

## JURISDICTION

2.   Jurisdiction of this Court arises under 15 U.S.C. § 1681p and 28 U.S.C. § 1337.

3.   Venue in this district is proper in that Drake resides in this District.

## PARTIES

4.   Plaintiff, Melinda S. Drake (hereinafter referred to as "Drake") is an adult individual with an address of 216 7th Street, New Cumberland, Pennsylvania 17070.

5.   Defendant, Experian Information Solutions, Inc. (hereinafter referred to as "Experian"), at all times relevant hereto, is and was a corporation engaged in the business of nationwide consumer reporting with an address of 955 American Lane, Schaumburg, Illinois 60173.

6.   Defendant, Equifax Information Services, LLC (hereinafter referred to as "Equifax"), at all times relevant hereto, is and was a corporation engaged in the business of nationwide consumer reporting with an address of 1550 Peachtree Street NE, Atlanta, GA 30309.

## FACTUAL ALLEGATIONS OF DRAKE'S INITIAL
## DISCOVERY OF THE INACCURACIES IN HER CREDIT REPORT HISTORY

7.   On or about January 8, 2016 Drake was denied a credit card account by American Express. (Exhibit 1)

8.  After being denied her credit card, Drake obtained her credit report history (Exhibit 2) on January 15, 2016 and discovered inaccurate credit information being reported by TransUnion LLC, Experian and Equifax regarding a consumer account with Verizon Land Line Account for a home phone number ending in 8391 (hereinafter referred to as "VLLA").

9.  Verizon Communications Inc. (hereinafter referred to as "Verizon") reported the VLLA as "collection/charge off" to TransUnion LLC (hereinafter "Transunion"), "collection/charge off" to Experian and "late 120 days" to Equifax.

10. It should be noted that Transunion after being notified by Drake of the reporting inaccuracy promptly investigated the matter and corrected the report.

11. After discovering the inaccurate credit information in her January 15, 2016 credit report for the VLLA, Drake sent a February 16, 2016 letter (Exhibit 3a) to Transunion requesting that her credit report be corrected.

12. Transunion like other nationwide consumer/credit reporting agencies uses a system known as the Online Solution for Complete and Accurate Reporting (hereinafter referred to as "e-OSCAR") to send and receive Automated Customer Dispute Verifications ("hereinafter referred to as "ACDV"). The e-OSCAR system is a browser-based system for conveying consumer disputes to furnishers and for furnishers to convey the results of their investigation to the consumer/credit reporting agencies, designed in part in furtherance of compliance with the FCRA, 15 U.S.C. § 1681i(a)(5)(D).

13. When a credit reporting agency, such as Transunion receives a dispute regarding the accuracy of a credit report an ACDV will be completed by the credit reporting

agency and sent, via the e-OSCAR system, to the furnisher of the credit information that is in dispute.

14.  Transunion sent an ACDV to Verizon in response to Drake's February 16, 2016 allegation that there was inaccurate credit information on her credit report regarding the VLLA.

15.  In response to Transunion's ACDV request, Verizon sent Transunion an ACDV #361687585003001 (Exhibit 3b) dated March 21, 2016 regarding the VLLA trade line.

16.  Verizon's ACDV #361687585003001 (Exhibit 3b) contained conflicting and nonsensical factual errors such as: (a) the account was opened on December 29, 2014 when in fact the account was opened on June 7, 1995; (b) the date of last payment is left blank by Verizon when it was September 19, 2013; and (c) the date of 1st delinquency was reported as December 30, 2014 when Verizon was actually last paid on September 19, 2013.

17.  Transunion issued on March 23, 2016 an Investigation Results Letter (Exhibit 3c) to Drake informing her that the VLLA was now deleted from her credit history file.

18.  Transunion determined the information being reported in Verizon's ACDV #361687585003001 was inaccurate, incomplete or could not be verified since Transunion promptly deleted the VLLA trade line from Drake's credit history report as required by 15 U.S.C. §1681i(a)(5).

19.  Transunion did NOT simply "parrot" the response from Verizon's ACDV #361687585003001, which is exactly what Experian and Equifax willfully and

knowingly chose to do instead of conducting a reasonable investigation as required by the FCRA.

## FACTUAL ALLEGATIONS AS TO DEFENDANT EXPERIAN'S FLAWED INVESTIGATION INTO DRAKE'S INACCURATE CREDIT INFORMATION CLAIM

20. Experian's practices related to compiling and distributing consumer credit information are governed by the FCRA. The FCRA requires Experian to maintain reasonable procedures to assure maximum possible accuracy of consumer credit information. 15 U.S.C. § 1681e. The FCRA also establish that Drake may dispute information in her credit report. 15 U.S.C. § 1681i. When a dispute is made, Experian must conduct a reasonable reinvestigation of disputed information. In conducting a reinvestigation of disputed information, Experian is required to "review and consider all relevant information submitted by the consumer" with respect to such disputed information. 15 U.S.C. § 1681i(a)(4). If, after a reinvestigation, the information is found to be inaccurate, incomplete or cannot be verified, Experian must promptly delete or modify the information as appropriate. 15 U.S.C. §1681i(a)(5).

21. After discovering the inaccurate credit information in her January 15, 2016 credit report for the VLLA, Drake sent a February 16, 2016 letter (Exhibit 4) to Experian requesting that her credit report be corrected.

22. Experian like other nationwide consumer/credit reporting agencies uses a system known as e-OSCAR to send and receive ACDVs. The e-OSCAR system is a browser-based system for conveying consumer disputes to furnishers and for furnishers to convey the results of their investigation to the consumer/credit

reporting agencies, designed in part in furtherance of compliance with the FCRA, 15 U.S.C. § 1681i(a)(5)(D).

23. When Experian receives a dispute regarding the accuracy of a credit report an ACDV will be completed by Experian and sent, via the e-OSCAR system, to the furnisher of the credit information that is in dispute.

24. Experian sent an ACDV request to Verizon in response to Drake's February 16, 2016 allegation that there was inaccurate credit information for the VLLA trade line.

25. In response to Experian's ACDV request, Verizon sent to Experian an ACDV #2828-4909-17001 (Exhibit 5) dated March 15, 2016.

26. ACDVs have a space for "dispute codes" to categorize the consumer's dispute according to its type and in which a consumer comment regarding the dispute could be conveyed.

27. Experian, as noted in Dispute Code 1 in Verizon's ACDV #2828-4909-17001 (Exhibit 5), requests Verizon to verify payment history profile.

28. Verizon's March 15, 2016 ACDV #2828-4909-17001 (Exhibit 5) reported the 84 Month Payment / Account History code of "B" for the February 2016 Account History Month and a 84 Month Payment / Account History code of "G" for the Account History Month of September 2013 in response to Experian's request for Verizon to verify the payment history profile.

29. The 84 Month Payment / Account History code "B" (Exhibit 6) is defined as: "No payment history is available prior to this time – either because the account was not open or because the payment history cannot be furnished. A 'B' may be embedded within other values."

30. The 84 Month Payment / Account History code "G" (Exhibit 6) is defined as: "Collection."

31. Experian knew or should have known that the payment history profile provided by Verizon's March 15, 2016 ACDV #2828-4909-17001 (Exhibit 5) was inaccurate, incomplete or could not be verified. Experian could not verify the accuracy of the payment history since no payment history was provided by Verizon's March 15, 2016 ACDV #2828-4909-17001 (Exhibit 5) and Experian could not verify the "collection" code "G" for the Account History for the month of September 2013 since no payment history was provided by Verizon's March 15, 2016 ACDV #2828-4909-17001 (Exhibit 5). Experian should have promptly deleted the VLLA trade line from Drake's credit history report as required by 15 U.S.C. §1681i(a)(5) since Experian could not verify the accuracy of the information reported in Verizon's March 15, 2016 ACDV #2828-4909-17001 (Exhibit 5).

32. It should be noted that Verizon employee Linda Bell was the author of both Exhibit 5 bearing a date of March 15, 2016 and Exhibit 3b bearing a date of March 21, 2016.

33. In the ACDV dated March 15, 2016 (Exhibit 5) Verizon states: (a) the account was opened June 7, 1995 (only to claim six days later it was opened December 29, 2015 in Exhibit 3b); (b) the date of last payment is September 19, 2013 (only to claim six days later it is unknown because it is left blank in Exhibit 3b); and (c) the date of 1st delinquency is December 27, 2012 (only to claim six days later it was December 30, 2014 in Exhibit 3b).

34. After receiving ACDV #2828-4909-17001 (Exhibit 5) Experian sent Drake a Credit Report #2828-4909-17 (Exhibit 7) dated March 15, 2016 in response to her February 16, 2016 dispute letter.

35. Experian's March 15, 2016 Credit Report # 2828-4909-17 (Exhibit 7) simply parrots the information provided by the ACDV #2828-4909-17001 (Exhibit 5).

36. Experian failed to conduct a reasonable investigation.

37. Experian failed to report in Experian's Credit Report #2828-4909-17 (Exhibit 7) that Drake was disputing the inaccurate information on her credit report. FCRA 15 U.S.C. § 1681e(8) requires Experian to report Drake's dispute on her credit report.

38. If Experian had conducted any reasonable investigation it would have learned that Verizon was reporting wildly different dates, labeling its ACDV with code "B" (payment history cannot be furnished) and conflicting information confirming that Drake's report of inaccurate information concerning the VLLA was completely correct. Since Experian could not verify the accuracy of the reported information from Verizon, Experian is required by 15 U.S.C. §1681i(a)(5) to promptly delete the VLLA trade line from Drake's credit history report.

39. Experian acted with actual malice in willfully reporting on March 15, 2016 on Drake's credit report inaccurate and misleading information by reporting that as of October 2013 the VLLA was "considered negative" when the ACDV #2828-4909-17001 (Exhibit 5) reported the last payment as September 19, 2013 with zero current balance and zero amount past due. Experian ignored the fact that there was zero current balance and zero amount past due and reported the account as negative as of October 2013.

40. Experian's parroting the information provided by a furnisher/creditor (Verizon) may be considered a willful violation of the FCRA as the court opined in *Campbell v. Chase Manhattan Bank, USA, N.A.*, No. 02-3489, 005 WL 1514221, 16 (D.N.J. June 2005):

> "...parroting information received from original source may be considered a willful violation of the FCRA."

41. Comparing Drake's January 15, 2016 Credit History Report (Exhibit 2) and Experian's March 15, 2016 Credit Report #2828-4909-17 (Exhibit 7), Experian made the following corrections on the March 15, 2016 Credit Report #2828-4909-17: The pay status went from collections/charge off to paid/closed (with no other notations) to a collection notation as "negative" for the month of October 2013. The investigation conducted by Experian was not reasonable since the last payment received was on September 19, 2013 with no outstanding balance but Experian was reporting a payment history collection for the month of October 2013. Experian acted in actual malice in willfully continuing to report inaccurate and misleading information on Drake's credit report.

42. Drake responded to Experian's March 15, 2016 Credit Report #2828-4909-17 by sending a March 25, 2016 dispute letter (Exhibit 8) requesting information that was obtained in Experian's investigation into the VLLA trade line that it relied upon to issue its March 15, 2016 Credit Report #2828-4909-17.

43. It is not presently known if Experian sent an ACDV request to Verizon in response to Exhibit 8.

44. Experian sent Drake an April 5, 2016 Credit Report #1622-4964-64 (Exhibit 9) in response to Drake's March 25, 2016 dispute letter (Exhibit 8). Experian's April 5,

2016 Credit Report #1622-4964-64 contained no changes when compared to Experian's March 15, 2016 Credit Report #2828-4909-17 (Exhibit 7). The reinvestigation conducted by Experian was not reasonable since the last payment received was on September 19, 2013 with no outstanding balance but Experian reported a payment history collection for the month of October 2013 as "negative". Due to Experian's failure to conduct a reasonable reinvestigation, it acted with actual malice in willfully continuing to report inaccurate and misleading information on Drake's credit report.

45. Experian failed to report in Experian's Credit Report #1622-4964-64 (Exhibit 9) that Drake was disputing the inaccurate information on her credit report. FCRA 15 U.S.C. § 1681e(8) requires Experian to report Drake's dispute on her credit report.

46. Drake responded to Experian's April 5, 2016 Credit Report #1622-4964-64 (Exhibit 9) by sending an April 19, 2016 dispute letter (Exhibit 10) to Experian requesting the documentation obtained through its supposed reinvestigation into the VLLA trade line that it relied upon to issue Experian's April 5, 2016 Credit Report #1622-4964-64.

47. Experian sent an ACDV request to Verizon to respond to Drake's April 19, 2016 dispute letter (Exhibit 10) requesting copies of the documentation obtained by Experian that was relied upon to issue its April 5, 2016 Credit Report #1622-4964-64 (Exhibit 9).

48. In response to Experian's ACDV request, Verizon sent ACDV #2831-9818-83001 (Exhibit 11) dated May 13, 2016.

49. Experian, as noted in Dispute Code 1 in Verizon's ACDV #2831-9818-83001 (Exhibit 11), requests Verizon to provide or confirm complete ID and account information.

50. Verizon's ACDV dated May 13, 2016 #2831-9818-83001 (Exhibit 11) reported the 84 Month Payment / Account History code of "B" for the April 2016 Account History Month and a 84 Month Payment / Account History code of "G" for the Account History Month of September 2013 in response to Experian's request for Verizon to verify the payment history profile.

51. The 84 Month Payment / Account History code "B" (Exhibit 6) is defined as: "No payment history is available prior to this time – either because the account was not open or because the payment history cannot be furnished. A 'B' may be embedded within other values."

52. The 84 Month Payment / Account History code "G" (Exhibit 6) is defined as: "Collection."

53. Experian knew or should have known that the payment history profile provided by Verizon's May 13, 2016 ACDV #2831-9818-83001 (Exhibit 11) was inaccurate, incomplete or could not be verified. Experian could not verify the accuracy of the payment history since Verizon's May 13, 2016 ACDV #2831-9818-83001 reported no payment history and Experian could not verify the "collection" code "G" for the Account History for the month of September 2013 since Verizon's May 13, 2016 ACDV #2831-9818-83001 reported no payment history. Experian should have promptly deleted the VLLA trade line from Drake's credit history report as required by 15 U.S.C. §1681i(a)(5) since Experian could not verify the accuracy of the

information reported in Verizon's May 13, 2016 ACDV #2831-9818-83001 (Exhibit 11).

54. Exhibit 11 is Verizon's third known ACDV and it compares to the other two (Exhibit 3b and Exhibit 5) as follows:

|  | ACDV 3/21/16 Exhibit 3b | ACDV 3/15/16 Exhibit 5 | ACDV 5/13/16 Exhibit 11 |
|---|---|---|---|
| Date Opened | 12/29/2014 | 6/7/1995 | 6/7/1995 |
| Date Last Payment | 9/19/2013 | 9/19/2013 | 9/19/2013 |
| Date Closed | 4/6/2015 | 6/14/2013 | 6/14/2013 |
| Date 1st Delinquency | 12/30/2014 | 12/27/2012 | 12/27/2012 |

55. After receiving Verizon's ACDV #2831-9818-83001 (Exhibit 11) Experian sent Drake a May 13, 2016 Credit Report #2831-9818-83 (Exhibit 12). Experian's May 13, 2016 Credit Report #2831-9818-83 simply parroted the information provided by the Verizon's ACDV #2831-9818-83001 (Exhibit 11) and was a duplicate of its April 5, 2016 Credit Report (Exhibit 9) except Experian changed the "first reported" from September 2013 (Exhibit 9) to August 2013 (Exhibit 12) and the payment history from "October 2013 and September 2013" (Exhibit 9) to "September 2013 and August 2013" (Exhibit 12).

56. Experian's Credit Report #2831-9818-83 (Exhibit 12) reported that Drake was disputing the inaccurate information on her credit report. Experian states in Report #2831-918-83 (Exhibit 12): "Account Information disputed by consumer (Meets requirement of the Fair Credit Reporting Act)." Experian failed to report Drake's dispute in Experian's Credit Report #2828-4909-17 (Exhibit 7) and Experian's Credit Report #1622-4964-64 (Exhibit 9) which are violations of the FCRA 15 U.S.C. § 1681e(8).

57. Experian made changes to the credit report but since the ACDVs did not provide different information (Exhibit 5 and Exhibit 11 are identical) except for different response date and employee names it is clear that Experian made changes "out of the blue" instead of conducting a reasonable investigation.

58. Experian failed to conduct a reasonable reinvestigation and acted with actual malice in willfully continuing to report inaccurate and misleading information on Drake's credit report such as reporting the account closed at grantor's request and reporting the first reported date as August 2013.

59. Experian did not report dates for the Date of 1st Delinquency but rather only reported first reported dates on the credit reports provided to Drake. The Date of 1st Delinquency is defined by the FCRA §1681c(c)(1) to be the month and year of the commencement of the delinquency on the account that immediately preceded the credit account being placed for collection, charged to profit or loss, or subjected to any similar action. The Date of 1st Delinquency is materially important to consumers because it determines the "age" of delinquency. Under credit scoring, more recently reported delinquencies operate to lower a person's credit score as compared to older delinquencies. Without the disclosure of proper dates of delinquency, consumers cannot dispute inaccurate information about the "age" of their credit accounts and, therefore, are subject to low, inaccurate credit scores. Drake has not been able to dispute the inaccurate information about the "age" of the VLLA trade line since Experian does not report Date of 1st Delinquency but rather reports first reported dates on Drake's credit history report for the VLLA trade line causing Drake to have low, inaccurate credit scores.

60. When comparing the April 5, 2016 Credit Report #1622-4964-64 (Exhibit 9) and Experian's May 13, 2016 Credit Report #2831-9818-83 (Exhibit 12), Experian made the following changes to the May 13, 2016 Credit Report #2831-9818-83: (a) The First Reported Date was amended to August 2013 from September 2013; (b) The Date of Status was amended to September 2013 from October 2013; and (c) The Comment Section was amended to Account Information disputed by consumer (Meets requirement of the Fair Credit Reporting Act), account closed at grantor's request. Due to Experian's failure to conduct a reasonable reinvestigation and Experian's reliance on parroting the information provided by the ACDV #2831-9818-83001 (Exhibit 11), Experian acted in actual malice in willfully continuing to report inaccurate and misleading information on Drake's credit report.

61. Drake's February 16, 2016 dispute letter (Exhibit 4) informed Experian that on September 19, 2013 Drake paid $196.39 [See Drake's September 2013 Bank Statement enclosed with her February 16, 2016 dispute letter (Exhibit 4)] to Verizon. Experian knew or should have known that the $192.00 being reported as the the last payment in Verizon's ACDV #2828-4909-17001 (Exhibit 5) and Verizon's ACDV #2831-9818-83001 (Exhibit 11) were inaccurate since Drake provided information that was accurate and verified by Drake's September 2013 Bank Statement showing a September 19, 2013 invoice payment of $196.39.

62. Any reasonable person should have realized that Verizon was incapable of generating even the most basic facts in a consistent manner by submitting dates that were wildly different, labeling its ACDV with code "B" (payment history cannot be furnished) and reporting an inaccurate last payment of $192.00. This should have

raised a reasonable suspicion with Experian that Verizon's information was inaccurate and therefore must be removed from Drake's credit file because it could not be verified.

63. Experian's actions do not comply with the standard found in ***Curtis J. Collins v. Experian Information Solutions, Inc.***, 2:11-CV-938 (January 5, 2015):

> When a consumer disputes the completeness or accuracy of any information contained in her credit report, the consumer reporting agency must conduct a reinvestigation. If the reinvestigation reveals that the information is inaccurate or cannot be verified, the consumer reporting agency must promptly delete the information. 15 U.S.C. § 1681(i)(a). Failure to conduct a reasonable reinvestigation violates the FCRA. ***Cushman v Trans Union Corp.***, 115 F.3d 220,223-24 (3rd Cir 1997).

64. Under the FCRA, Experian was required to report accurate information and to conduct a proper investigation of disputed information. 15 U.S.C. §1681e(b) and 1681i(a).

65. Experian has been warned of its inadequate FCRA practices and associated credit reporting practices by the Office of the New York Attorney General Eric T. Schneiderman in his investigation of Experian in March 2015 and the Mississippi Attorney General's investigation in ***State of Mississippi ex rel., v. Experian Information Solutions, Inc.***, 1:14-CV-243.

66. Experian failed to conduct a reasonable and adequate investigation/reinvestigation into Drake's disputed credit reporting and continued to report false and inaccurate information to any potential credit grantor who accessed Drake's credit report. Experian should have realized that the information being supplied to support the credit information for the VLLA trade line was inaccurate and could not be verified. Since Experian could not verify the credit information for the VLLA trade line,

Experian should have promptly deleted the VLLA trade line from Drake's credit history report, as required by 15 U.S.C. §1681i(a)(5).

67.   Experian has willfully and/or negligently failed and/or refused to remove the inaccurate credit information pertaining to Drake's credit history until Verizon deleted the VLLA trade line on August 26, 2016. Experian simply parroted the information from the ACDV's obtained by Experian's investigation and/or reinvestigations which led to Experian to issue the following credit reports with inaccurate and conflicting information: March 15, 2016 Credit Report #2828-4909-17 (Exhibit 7), April 5, 2016 Credit Report #1622-4964-64 (Exhibit 9) and May 13, 2016 Credit Report #2831-9818-83 (Exhibit 12).

68.   The "First Reported" and "Date of Status" as reported by Experian in the March 15, 2016 Credit Report #2828-4909-17 (Exhibit 7), April 5, 2016 Credit Report #1622-4964-64 (Exhibit 9) and May 13, 2016 Credit Report #2831-9818-83 (Exhibit 12) are as follows:

|  | 3/15/16 Credit Report Exhibit 7 | 4/5/16 Credit Report Exhibit 9 | 5/13/16 Credit Report Exhibit 12 |
|---|---|---|---|
| First Reported | Sep 2013 | Sep 2013 | Aug 2013 |
| Date of Status | Oct 2013 | Oct 2013 | Sep 2013 |

69.   The Date of Status date on a credit report should reflect the date when the trade line went uncollectible.

70.   The Date First Reported is the first time a trade line is reported to Experian, that date should never change.

71.  Experian changed the Date of Status from Oct 2013 to Sep 2013 in Exhibit 12 to re-age the account. Experian is penalizing Drake for exercising her statutory right to dispute inaccurate information on her credit report.

72.  Re-aging accounts by changing the Date of Status dates are misleading. The Court opined in ***Toliver v. Experian Info. Solutions, Inc.***, 973 F. Supp. 2d 707, 727 (S.D. Tex 2013):

> "Date of Status entry was misleading in such a way to such an extent that it can be expected to adversely affect credit decisions."

73.  Experian knew or should have known that reporting a Date of Status of Sept 2013 in the May 13, 2016 Credit Report #2831-9818-83 (Exhibit 12) was inconsistent with the information being provided by Verizon or Drake. Drake's position is that Drake on December 2012 closed the VLLA trade line and Drake made final payment for the VLLA trade line on September 19, 2013. Verizon position as reported in the May 13, 2016 ACDV (Exhibit 11) is that the "Date of 1st Delinquency" was December 27, 2012 and the "Last Payment Received" date was 9/19/13.

74.  In either scenario, Experian has no supporting information to justify the Date of Status change to Sept 2013 in the May 13, 2016 Credit Report #2831-9818-83 (Exhibit 12) or for that matter to justify the Date of Status of Oct 2013 reported in the March 15, 2016 Credit Report #2828-4909-17 (Exhibit 7) and April 5, 2016 Credit Report #1622-4964-64 (Exhibit 9). Experian failed to conduct a reasonable and adequate investigation/reinvestigation into Drake's disputed credit reporting

75.  Experian changed the Date "First Reported" from Sep 2013 to Aug 2013 in the May 13, 2016 Credit Report #2831-9818-83 (Exhibit 12). There is only one First

Reported Date as the Court opined in ***Toliver v. Experian Info. Solutions, Inc.***, 973

F. Supp. 2d 707, 727 (S.D. Tex 2013):

> "First Reported" entry is meant to reflect the date that the creditor first
> reported the account to Experian. Experian should know this date."

76.  Experian knew or should have known that reporting a First Reported date of Aug

2013 in the May 13, 2016 Credit Report #2831-9818-83 (Exhibit 12) was

inconsistent with the information being provided by Verizon or Drake or for the fact

that the First Reported Date should not have changed because there can only be one

First Reported Date. Drake's position is that Drake closed the VLLA trade line in

December 2012 and Drake made final payment for the VLLA trade line on

September 19, 2013. Verizon position as reported in the May 13, 2016 ACDV

(Exhibit 11) is that the VLLA trade line "Date of 1st Delinquency" was December

27, 2012 and the "Last Payment Received" date was 9/19/13.

77.  These scenarios do not provide Experian with supporting information to justify the

First Reported Date change to Aug 2013 in the May 13, 2016 Credit Report #2831-

9818-83 (Exhibit 12) or for that matter to justify the First Reported Date of Status of

Sep 2013 reported in the March 15, 2016 Credit Report #2828-4909-17 (Exhibit 7)

and the April 5, 2016 Credit Report #1622-4964-64 (Exhibit 9). Experian failed to

conduct a reasonable and adequate investigation/reinvestigation into Drake's

disputed credit reporting

78.  Experian failed to conduct a reasonable and adequate investigation/reinvestigation

into Drake's disputed credit reporting and did not delete or correct the false

information but instead re-aged the dates on the VLLA trade line and continued to

report false and inaccurate information to any potential credit grantor who accessed Drake's credit report.

79. If Experian was following any, much less reasonable procedures to assure maximum accuracy, they would not allow such inaccurate reporting and once they were put on notice via the verifiable information provided by Drake or the inaccurate and unverifiable information being provided by Verizon, they should have fixed or corrected the false and misleading information. Experian's procedures are so bad or lacking that they continue to report obvious inaccurate data on Drake's credit report with the knowledge that Experian could not verify the accuracy of the information obtained from the ACDV Exhibits 5 and 11 to issue Experian's March 15, 2016 Credit Report #2828-4909-17 (Exhibit 7) and May 13, 2016 Credit Report #2831-9818-83 (Exhibit 12).

80. Experian's re-aging and manipulating of the dates in Drake's credit reports is falsely representing the character of the VLLA trade line by re-aging the VLLA trade line and making it look much more recent than it really is. The more recent the debt the more it damages credit scores. Experian has damaged Drake's credit score by the re-aging and manipulating of the dates in Experian's March 15, 2016 Credit Report #2828-4909-17 (Exhibit 7), April 5, 2016 Credit Report #1622-4964-64 (Exhibit 9) and May 13, 2016 Credit Report #2831-9818-83 (Exhibit 12).

81. Experian's re-aging and manipulating of the dates artificially lowered Drake's credit score more than if the account was being reported accurately as well as making VLLA trade line seem more recently delinquent then it really was to potential creditors, causing her damage.

82. Drake's credit score was adversely affected as a result of Experian's conduct in reporting a negative account.

83. As a result of Experian's willful, wanton, reckless, and/or negligent action, Drake has been damaged.

84. Experian acted with actual malice in willfully continuing to report inaccurate and misleading information on Drake's credit, knowing full well that other creditors were accessing the Drake's credit report, all to the Drake's determent and loss.

85. As a result of Experian's conduct, Drake has suffered actual damages and serious financial harm arising from monetary loses relating to credit denials, loss of use of funds, loss of credit and loan opportunities, excessive and/or elevated interest rate and finance charges, and legal fees and court costs, all which will continue into the future to Drake's detriment and loss.

86. As a result of Experian's conduct, Drake has suffered great physical emotional and mental pain and anguish, and Drake will continue to suffer the same for an indefinite time into the future, all to Drake's great detriment and loss.

87. As a result of Experian's conduct, Drake has suffered actual damages in the form of financial and dignitary harm arising from the injury to credit rating and reputation, and Drake will continue to suffer the same for an indefinite time into the future, all to Drake's great detriment and loss.

88. As a result of Experian's conduct, Drake has suffered a decreased credit score as a result of the inaccurate information and inquiries appearing on Drake's credit file.

89. At all times relevant hereto, Experian was acting by and through its agents, servants and/or employees who were acting within the course and the scope of their agency or employment, and under the direct supervision and control of the Experian herein.

90. At all times relevant hereto, the conduct of Experian, as well as that of its agents, servants and/or employees, was malicious, intentional, willful, reckless, and grossly negligent disregard for federal and state laws and the rights of Drake herein.

91. Drake has suffered mental anguish, emotional distress, worry, humiliation and embarrassment as a result of Experian's actions.

## FACTUAL ALLEGATIONS AS TO DEFENDANT EQUIFAX'S FLAWED INVESTIGATION INTO DRAKE'S INACCURATE CREDIT INFORMATION CLAIM

92. Equifax's practices related to compiling and distributing consumer credit information are governed by the FCRA. The FCRA requires Equifax to maintain reasonable procedures to assure maximum possible accuracy of consumer credit information. 15 U.S.C. § 1681e. The FCRA also establish that Drake may dispute information in her credit report. 15 U.S.C. § 1681i. When a dispute is made, Equifax must conduct a reasonable reinvestigation of disputed information. In conducting a reinvestigation of disputed information, Equifax is required to "review and consider all relevant information submitted by the consumer" with respect to such disputed information. 15 U.S.C. § 1681i(a)(4). If, after a reinvestigation, the information is found to be inaccurate, incomplete or cannot be verified, Equifax must promptly delete or modify the information as appropriate. 15 U.S.C. §1681i(a)(5).

93. After discovering the inaccurate credit information on the January 15, 2016 credit report for the VLLA trade line, Drake sent a February 16, 2016 dispute letter (Exhibit 13) to Equifax requesting to have Drake's credit report corrected.

94. Equifax like other nationwide consumer/credit reporting agencies uses a system known as e-OSCAR to send and receive ACDV's. The e-OSCAR system is a browser-based system for conveying consumer disputes to furnishers and for furnishers to convey the results of their investigation to the consumer/credit reporting agencies, designed in part in furtherance of compliance with the FCRA, 15 U.S.C. § 1681i(a)(5)(D)."

95. When Equifax receives a dispute regarding the accuracy of a credit report, Equifax generates an ACDV that is sent via the e-OSCAR system to the furnisher of the credit information that is in dispute.

96. Equifax sent an ACDV request to Verizon in response to Drake's February 16, 2016 allegation that there was inaccurate credit information on Drake's credit report for the VLLA phone line.

97. In response to Equifax's ACDV request, Verizon sent an ACDV to Equifax (Exhibit 14) dated March 15, 2016 #99996057066718021.

98. ACDVs have a space for "dispute codes" to categorize the consumer's dispute according to its type and in which a consumer comment regarding the dispute could be conveyed.

99. Equifax, as noted in Dispute Code 1 in Verizon's ACDV #99996057066718021 (Exhibit 14), requests Verizon to verify payment history profile.

100. Verizon's March 15, 2016 ACDV #99996057066718021 (Exhibit 14) reported the 84 Month Payment / Account History code of "B" for the Account History month of August 2013 and February 2016; and a 84 Month Payment / Account History code of "G" for the Account History month of September 2013 in response to Equifax's request for Verizon to verify the payment history profile.

101. The 84 Month Payment / Account History code "B" (Exhibit 6) is defined as: "No payment history is available prior to this time – either because the account was not open or because the payment history cannot be furnished. A 'B' may be embedded within other values."

102. The 84 Month Payment / Account History code "G" (Exhibit 6) is defined as: "Collection."

103. Equifax knew or should have known that the payment history profile provided by Verizon's March 15, 2016 ACDV #99996057066718021 (Exhibit 14) was inaccurate, incomplete or could not be verified. Equifax could not verify the accuracy of the payment history since no payment history was provided by Verizon's March 15, 2016 ACDV #99996057066718021 (Exhibit 14) and Equifax could not verify the "collection" code "G" for the Account Month of September 2013 since no payment history was provided by Verizon's March 15, 2016 ACDV #99996057066718021 (Exhibit 14). Equifax should have promptly deleted the VLLA trade line from Drake's credit history report as required by 15 U.S.C. §1681i(a)(5) since Equifax could not verify accuracy of the information reported in Verizon's March 15, 2016 ACDV #99996057066718021 (Exhibit 14).

104. Equifax sent to Drake a March 16, 2016 Credit Report #6057066718 (Exhibit 15) that was based on Equifax simply parroting the information provided by Verizon's ACDV #99996057066718021 (Exhibit 14).

105. Equifax failed to conduct a reasonable investigation and acted with actual malice in willfully continuing to report inaccurate and misleading information on Drake's credit report such as: (a) the account status reported as "paid collection" is inaccurate since on September 19, 2013 Drake paid Verizon (the furnisher/creditor) directly and not a collection agency for Verizon; and (b) the date of 1st delinquency reported as December 2012 is inaccurate since Drake requested the VLLA to be closed in December 2012.

106. The Date of 1st Delinquency is defined by the FCRA §1681c(c)(1) to be the month and year of the commencement of the delinquency on the account that immediately preceded the credit account being placed for collection, charged to profit or loss, or subjected to any similar action. The Date of 1st Delinquency is materially important to consumers because it determines the "age" of delinquency. Under credit scoring, more recently reported delinquencies operate to lower a person's credit score as compared to older delinquencies. Without the disclosure of proper dates of delinquency, consumers cannot dispute inaccurate information about the "age" of their credit accounts and, therefore, are subject to low, inaccurate credit scores.

107. The reliance of Equifax to parrot the information provided by a furnisher / creditor (Verizon) may be considered a willful violation of the FCRA as the court opined in *Campbell v. Chase Manhattan Bank, USA, N.A.*, No. 02-3489, 005 WL 1514221, 16 (D.N.J. June 2005):

"...parroting information received from original source may be considered a willful violation of the FCRA."

108. Comparing the January 15, 2016 Credit History Report (Exhibit 2) regarding Equifax and Equifax's March 16, 2016 Credit Report #6057066718 (Exhibit 15), Equifax made the following changes to the March 16, 2016 Credit Report #6057066718: the pay status went from "late 120 days" to "Collection Account".

109. Equifax has provided no documentation that Equifax verified the change in the pay status from "late 120 days" to a pay status of "Collection Account." Equifax knew or should have known that without the verification it was improper to change the pay status from "late 120 days" to "collection account". Equifax should have promptly deleted the VLLA trade line from Drake's credit history report as required by 15 U.S.C. §1681i(a)(5)

110. The investigation conducted by Equifax was not reasonable since the last payment received by Verizon was on September 19, 2013 but Equifax reported the status as "paid collection". Equifax acted in actual malice in willfully continuing to report inaccurate and misleading information on Drake's credit report.

111. After receiving Equifax's March 16, 2016 Credit Report #6057066718, Drake called Equifax requesting the documentation obtained by Equifax's supposed reinvestigation into the VLLA trade line that Equifax relied upon to issue Equifax's March 16, 2016 Credit Report #6057066718.

112. It is believed that Equifax did send an ACDV request to Verizon in response to Drake's phone call to Equifax regarding her allegation that there was inaccurate credit information in Equifax's March 16, 2016 Credit Report #6057066718 (Exhibit 15).

113. Equifax's March 22, 2016 Credit Report #6057066718 (Exhibit 16), which followed Drake's phone call, reported that there is an amount owed of $148.00 and the date of 1st delinquency is December 2014. Either Equifax obtained this information from Verizon's ACDV in response to Drake's phone call or Equifax arbitrarily decided to report this information based on its reinvestigation. In either scenario Drake's credit report still contained inaccurate and misleading information.

114. Equifax sent Drake the March 22, 2016 Credit Report #6057066718 (Exhibit 16). Equifax acted in actual malice by willfully continuing to report inaccurate and misleading information on Drake's credit report such as: (a) the amount owed reported as $148.00 when Equifax knew there was no balance due since Equifax's March 16, 2016 Credit Report #6057066718 (Exhibit 15) reported zero balance amount and zero past due; and (b) the date of 1st delinquency reported as December 2014 when Equifax knew the last payment received for VLLA trade line was September 2013 with no open balance. Equifax knew or should have known that the date of 1st delinquency of December 2012 as reported in Equifax's March 16, 2016 Credit Report #6057066718 (Exhibit 15) could not have changed to December 2014 as set forth in Equifax's March 22, 2016 Credit Report #6057066718 (Exhibit 16) since the last payment received was reported as September 2013 in both Exhibit 15 and Exhibit 16.

115. Equifax continued to report inaccurate dates for the date of 1st delinquency. Drake has not been able to dispute the inaccurate information about the "age" of the VLLA trade line since Equifax has reported multiple dates on Drake's credit history report causing Drake to have low, inaccurate credit scores.

116. Comparing Equifax's March 22, 2016 Credit Report #6057066718 (Exhibit 16) and Equifax's March 16, 2016 Credit Report #6057066718 (Exhibit 15), Equifax made the following changes to the March 22, 2016 Credit Report #6057066718 (Exhibit 16): (a) balance amount due was changed from zero to $148.00; (b) the date of 1st delinquency was changed to 12/2014 from 12/2012; and (c) status of "Paid Collection" was changed to "Collection Account; Account Closed by Credit Grantor".

117. Due to Equifax's failure to conduct a reasonable reinvestigation, Equifax acted in actual malice in willfully continuing to report inaccurate and misleading information on Drake's credit report.

118. After receiving Equifax's March 22, 2016 Credit Report #6057066718 (Exhibit 16), Drake sent an April 19, 2016 dispute letter (Exhibit 17) to Equifax requesting the documentation obtained by Equifax's supposed reinvestigation into the VLLA trade line that Equifax relied upon to issue Equifax's March 22, 2016 Credit Report #6057066718.

119. Equifax sent an ACDV request to Verizon for its response to Drake's April 19, 2016 allegation that there was inaccurate credit information on Drake's credit report for the VLLA trade line.

120. In response Verizon sent to Equifax an ACDV #99996119052238024 (Exhibit 18) dated May 12, 2016.

121. Equifax, as noted in Dispute Code 2 in Verizon's ACDV #99996119052238024 (Exhibit 18), requests Verizon to verify payment history profile.

122. Verizon's May 12, 2016 ACDV #99996119052238024 (Exhibit 18) reported the 84 Month Payment / Account History code of "B" for the Account History month of April 2016 in response to Equifax's request for Verizon to verify the payment history profile.

123. The 84 Month Payment / Account History code "B" (Exhibit 6) is defined as: "No payment history is available prior to this time – either because the account was not open or because the payment history cannot be furnished. A 'B' may be embedded within other values."

124. Equifax knew or should have known that the payment history profile provided by Verizon's May 12, 2016 ACDV #99996119052238024 (Exhibit 18) was inaccurate, incomplete or could not be verified. Equifax could not verify the accuracy of the payment history since no payment history was provided by Verizon's May 12, 2016 ACDV #99996119052238024 (Exhibit 18). Equifax should have promptly deleted the VLLA trade line from Drake's credit history report as required by 15 U.S.C. §1681i(a)(5) since Equifax could not verify the accuracy of the information reported in Verizon's May 12, 2016 ACDV #99996119052238024 (Exhibit 18).

125. Verizon's second ACDV (Exhibit 18) to Equifax contained wildly different information from its first ACDV to Equifax (Exhibit 14). Both ACDVs were generated by Dewon Dixon. A comparison is as follows:

|  | ACDV 3/15/16 EXHIBIT 14 | ACDV 5/12/16 EXHIBIT 18 |
|---|---|---|
| Date Closed | 6/14/2013 | 4/6/2015 |
| Date of 1st Delinquency | 12/27/2012 | 12/30/2014 |

126. Any reasonable investigation would have revealed that Verizon was incapable of generating even the most basic facts in a consistent manner by submitting dates that

were wildly different and labeling its ACDV with code "B" (payment history cannot be furnished). This should have raised a reasonable suspicion with Equifax that Verizon's information was inaccurate and therefore must be removed from Drake's credit file because it could not be verified.

127. After receiving Verizon's ACDV #99996119052238024 (Exhibit 18), Equifax sent Drake a May 16, 2016 Credit Report #6119052238 (Exhibit 19). The May 16, 2016 Credit Report #6119052238 (Exhibit 19) shows Equifax parroting the information provided by Verizon's ACDV #99996119052238024 (Exhibit 18).

128. Equifax's failed to conduct a reasonable reinvestigation despite knowing that Verizon was submitting contradictory information of a material nature by using dates separated by years for the "date closed" and "date of 1st delinquency".

129. Equifax acted with actual malice in willfully continuing to report inaccurate and misleading information on Drake's credit report such as: the Date of 1st Delinquency being reported as December 2014.

130. Equifax continued to report inaccurate dates for the date of 1st delinquency. Drake has not been able to dispute the inaccurate information about the "age" of the VLLA trade line since Equifax has reported multiple dates on Drake's credit history report causing Drake to have low, inaccurate credit scores.

131. Equifax made the following changes to the May 16, 2016 Credit Report #6119052238 (Exhibit 19) compared to the March 22, 2016 Credit Report #6057066718 (Exhibit 16): (a) balance amount due amended to zero from $148.00; and (b) the status from "Collection Account; Account Closed by Credit Grantor" to "Paid Collection; Account Closed by Credit Grantor".

132. Due to Equifax's failure to conduct a reasonable reinvestigation, Equifax acted in actual malice in willfully continuing to report inaccurate and misleading information on Drake's credit report when any reasonable person would have already noticed that Verizon was reporting wildly different dates for the date closed and date of 1st delinquency.

133. Equifax then sent an ACDV request to Verizon to respond to Drake's August 1, 2016 letter that there was inaccurate credit information on Drake's credit report for the VLLA trade line.

134. In response to Equifax's ACDV request, Verizon sent to Equifax an ACDV #99996223037777042 (Exhibit 20) dated August 23, 2016. This ACDV reported the following information in comparison to the earlier ACDVs by Verizon to Equifax:

|  | ACDV 3/15/16 EXHIBIT 14 | ACDV 5/12/16 EXHIBIT 18 | ACDV 8/23/16 EXHIBIT 20 |
|---|---|---|---|
| Date Closed | 6/14/2013 | 4/6/2015 | 6/14/2013 |
| Date of 1st Delinquency | 12/27/2012 | 12/30/2014 | 12/27/2012 |

135. Equifax knew when it received the third ACDV (Exhibit 20) from Verizon on 8/23/2016 that it had changed two material dates multiple times and this should have triggered a reasonable investigation before parroting the information on a new credit report, which is exactly what Equifax did on August 29, 2016.

136. Equifax sent to Drake the August 29, 2016 Credit Report #6223037777 (Exhibit 21) in response to Drake's August 1, 2016 letter. Equifax's August 29, 2016 Credit Report #6223037777 was based on Equifax parroting the information provided by Verizon's ACDV #9999622303777042 (Exhibit 20).

137. Equifax failed to conduct a reasonable reinvestigation and acted with actual malice in willfully continuing to report inaccurate and misleading information on Drake's credit report.

138. Equifax continued to report inaccurate dates for the date of 1st delinquency. Drake has not been able to dispute the inaccurate information about the "age" of the VLLA trade line since Equifax has reported multiple dates on Drake's credit history report causing Drake to have low, inaccurate credit scores.

139. Equifax made the following changes to the August 29, 2016 Credit Report #6223037777 (Exhibit 21) compared to the May 16, 2016 Credit Report #6119052238 (Exhibit 19) and the Verizon's August 23, 2016 ACDV #99996223037777042 (Exhibit 20): (a) the date of 1st delinquency was reported as 12/27/2012 from 12/30/2014; and (b) Historical Account Information reported as deleted. Defendant Equifax acted in actual malice in willfully continuing to report inaccurate and misleading information on Drake's credit report.

140. Equifax deleted the Historical Payment Account Information for the VLLA trade line as reported in Equifax's August 29, 2016 Credit Report #6223037777 (Exhibit 21).

141. Equifax knew or should have known that the payment history profile provided by Verizon's August 23, 2016 ACDV #99996223037777042 (Exhibit 20) was inaccurate, incomplete or could not be verified since Verizon's August 23, 2016 ACDV #99996223037777042 (Exhibit 20) provided only an 84 Month Payment / Account History code "B" (Exhibit 6) defined as: "No payment history is available

prior to this time – either because the account was not open or because the payment history cannot be furnished. A 'B' may be embedded within other values."

142. Equifax could not verify the accuracy of the payment history since no payment history was provided by Verizon's August 23, 2016 ACDV #99996223037777042 (Exhibit 20). Equifax should have promptly deleted the VLLA trade line from Drake's credit history report as required by 15 U.S.C. §1681i(a)(5) since Equifax could not verify the accuracy of the information reported in Verizon's August 23, 2016 ACDV #99996223037777042 (Exhibit 20).

143. Drake made allegations regarding the date of 1st delinquency and date closed in her letters and phone call to Equifax. Equifax failed to use dispute code #105 in the ACDVs sent to Verizon to accurately categorize Drake's dispute. Dispute Code #105 (Exhibit 22) states: "Disputes Dates of Last Payment / Date Opened / Date of First Delinquency / Date Closed. Verify all dates." Equifax should have used the Dispute Code #105 in the ACDVs sent to Verizon to correctly categorize Drake's dispute with Equifax and Verizon.

144. ACDVs have a space for "FCRA Relevant Information" to allow the credit reporting agency to report what the consumer states. Equifax made the following report in the FCRA Relevant Information section of Verizon's ACDV #9999622303777042 (Exhibit 20): "Consumer states she notified Verizon in December 2012 that she would no longer need the Land Line Consumer requested the line be closed and to send final bill. After nine months she received an invoice for 193 dollars and 39 cents." Equifax failed to report the same FCRA Relevant Information notation in

Verizon's ACDV #9999057066718021 (Exhibit 14) and Verizon's ACDV #99996119052238024 (Exhibit 18).

145. Drake's February 16, 2016 dispute letter (Exhibit 13) informed Equifax that on September 19, 2013 Drake paid $196.39 (See Drake's September 2013 Bank Statement enclosed with Drake's February 16, 2016 dispute letter (Exhibit 13)) to Verizon. Drake's April 19, 2016 dispute letter (Exhibit 17) informed Equifax that Verizon confirmed receiving Drake's $196.39 payment on September 19, 2013.

146. Equifax knew or should have known that reporting in ACDV #9999622303777042 (Exhibit 20) an invoice figure of $193.39 in the "FCRA Relevant Information" space and an Actual Payment of $192.00 with a Date of Last Payment of 09/01/2013 were inaccurate since Drake provided Equifax with information that was accurate and verified by Drake's April 19 2016 dispute letter (Exhibit 17), and Drake's February 16, 2016 dispute letter (Exhibit 13) with the enclosure of Drake's September 2013 Bank Statement confirming Drake's September 19, 2013 invoice payment of $196.39.

147. The "Balance Amount", "Amount Past Due", "Date of Last Payment" and "Date of 1st Delinquency" as reported by Equifax in the March 16, 2016 Credit Report #6057066718 (Exhibit 15), March 23, 2016 Credit Report #6057066718 (Exhibit 16), May 16, 2016 Credit Report #6119052238 (Exhibit 19) and August 29, 2016 Credit Report #6223037777 (Exhibit 21) are as follows:

|  | 3/16/16 Credit Report Exhibit 15 | 3/23/16 Credit Report Exhibit 16 | 5/16/16 Credit Report Exhibit 19 | 8/29/16 Credit Report Exhibit 21 |
|---|---|---|---|---|
| Balance Amount | $0.00 | $148.00 | $0.00 | $0.00 |
| Amount Past Due | $0.00 | $148.00 | $0.00 | $0.00 |
| Date of Last Payment | 9/2013 | 9/2013 | 9/2013 | 9/2013 |
| Date of 1st Delinquency | 12/2012 | 12/2014 | 12/2014 | 12/2012 |

148. Equifax is changing dates that should not be changed and is changing the dates based on Drake's statutory right to dispute inaccurate information. Equifax is penalizing Drake for exercising her statutory right to dispute inaccurate information on her credit report. Experian is attempting various re-aging tactics such as changing the amount due and changing the dates of date of 1st delinquency on Drake's VLLA trade line to a date that is more recent than legally accurate.

149. Equifax's re-aging and manipulating of the dates in Drake's credit report is falsely representing the character of the VLLA trade line by re-aging the VLLA trade line and making it look much more recent than it really is. The more recent the debt the more it damages credit scores. Equifax has damaged Drake's credit score by the re-aging and manipulation of the dates in Equifax's March 16, 2016 Credit Report (Exhibit 15), March 23, 2016 Credit Report (Exhibit 16), May 16, 2016 Credit Report (Exhibit 19) and August 29, 2016 Credit Report (Exhibit 21).

150. Equifax's re-aging and manipulating of the dates artificially lowered Drake's credit score more than if the account was being reported accurately as well as making VLLA trade line seem more recently delinquent then it really was to potential creditors, causing her damage.

151. On October 8, 2016 Drake sent a letter disputing the accuracy of Equifax's August 29, 2016 Credit Report #6223037777 (Exhibit 21).

152. Equifax then sent to Drake a November 3, 2016 Credit Report #6292042230 (Exhibit 23) in response to Drake's October 8, 2016 letter.

153. Equifax's November 3, 2016 Credit Report #6292042230 (Exhibit 23) reports the VLLA trade line as deleted.

154. Equifax's reliance on parroting earlier ACDV, which contained contradictory dates of a material nature, is a failure by Equifax to conduct a reasonable investigation and/or reinvestigation. Equifax acted with actual malice in willfully continuing to report inaccurate and misleading information on Drake's credit report between September 2013 and November 3, 2016.

155. Equifax has been warned of this type of consumer reporting agency practice as the Court opined in *Apodaca v. Discovery Financial Services, Equifax Credit Information Services, Inc.*, 417 F. Supp. 2d 1220 (D.N.M. 2006):

> "Based on the evidence of record, a rational fact finder could conclude that Equifax knew that pointless repetition of the cursory CDV procedure by its various agents and contractors was not going to resolve Plaintiff's dispute in a timely manner and only served to delay the matter until Plaintiff tired of the process or proceeded to litigation."

156. Under the FCRA, Equifax is required to report accurate information and to conduct a proper investigation of disputed information. 15 U.S.C. §1681e(b) and 1681i(a).

157. Equifax has been warned of its inadequate FCRA practices and associated credit reporting practices ranging from the New York Attorney General's investigation and settlement with Equifax in March 2015 and class action settlements in California (*Drew v. Equifax Information Services LLC*, No. C-07-00726); in Illinois (*Gillespie v. Equifax Information Services LLC, et al*, No. 05-C-0128); and in Pennsylvania (*Chakejian v. Equifax Information Services LLC*, No.07-2211).

158. Equifax failed to conduct a reasonable and adequate investigation/reinvestigation into Drake's disputed credit reporting and continued to report false and inaccurate information to any potential credit grantor who accessed Drake's credit report. Equifax should have realized that the information being supplied to support the credit information for the VLLA trade line was inaccurate and could not be verified.

Since Equifax could not verify the accuracy of the credit information for the VLLA

trade line, Equifax should have promptly deleted the VLLA trade line from Drake's

credit history report, as required by 15 U.S.C. §1681i(a)(5).

159. Equifax has willfully and/or negligently failed and/or refused to remove the

inaccurate credit information pertaining to Drake's credit history until Verizon

deleted the VLLA trade line on November 3, 2016. Equifax simply parroted the

information from the ACDV's obtained by Equifax's investigation and/or

reinvestigations which led to Equifax to issue the following credit reports with

inaccurate and conflicting information: March 16, 2016 Credit Report #6057066718

(Exhibit 15), March 22, 2016 Credit Report #6057066718 (Exhibit 16), May 16,

2016 Credit Report #6119052238 (Exhibit 19) and August 29, 2016 Credit Report

#6223037777 (Exhibit 21).

160. Drake's credit score has been adversely affected as a result of Equifax's conduct in

reporting a negative account.

161. As a result of Equifax's willful, wanton, reckless, and/or negligent action, Drake has

been damaged.

162. Equifax acted with actual malice in willfully continuing to report inaccurate and

misleading information on Drake's credit, knowing full well that other creditors

were accessing the Drake's credit report, all to the Drake's determent and loss.

163. As a result of Equifax's conduct, Drake has suffered actual damages and serious

financial harm arising from monetary loses relating to credit denials, loss of use of

funds, loss of credit and loan opportunities, excessive and/or elevated interest rate

and finance charges, legal fees and court costs and other related charges, all which will continue into the future to Drake's detriment and loss.

164. As a result of Equifax's conduct, Drake has suffered great physical emotional and mental pain and anguish, and Drake will continue to suffer the same for an indefinite time into the future, all to Drake's great detriment and loss.

165. As a result of Equifax's conduct, Drake has suffered actual damages in the form of financial and dignitary harm arising from the injury to credit rating and reputation, and Drake will continue to suffer the same for an indefinite time into the future, all to Drake's great detriment and loss.

166. As a result of Equifax's conduct, Drake has suffered a decreased credit score as a result of the inaccurate information and inquiries appearing on Drake's credit file.

167. At all times relevant hereto, Equifax was acting by and through its agents, servants and/or employees who were acting within the course and the scope of their agency or employment, and under the direct supervision and control of the Equifax herein.

168. At all times relevant hereto, the conduct of the Equifax, as well as that of its agents, servants and/or employees, was malicious, intentional, willful, reckless, and grossly negligent disregard for federal and state laws and the rights of Drake herein.

169. Drake has suffered mental anguish, emotional distress, worry, humiliation and embarrassment as a result of Equifax's actions.

## COUNT I – VIOLATIONS OF FAIR CREDIT REPORTING ACT AS TO DEFENDANT EXPERIAN

170. Drake incorporates by reference the allegations in ¶1-¶169 as though fully set forth.

171. At all times pertinent hereto, Experian was a "consumer reporting agency" as that term is defined by 15 U.S.C. §1681a(b) and (f).

172. At all times pertinent hereto, Drake was a "consumer" as that term is defined by 15 U.S.C. §1681a(c).

173. At all times pertinent hereto, the above mentioned credit reports were "consumer reports" as that term is defined by 15 U.S.C. §1681a(d)

174. Pursuant to 15 U.S.C. §1681n and 15 U.S.C. §1681o, Experian is liable to the Drake for engaging in the following conduct: (a) willfully and negligently failing to delete the inaccurate information from Drake's credit file after reinvestigation, in violation of 15 U.S.C. §1681i(a); (b) willfully and negligently failing to employ and follow reasonable procedures to assure maximum possible accuracy of Drake's credit report, information and file, in violation of 15 U.S.C. §1681e(b);        (c)    willfully and negligently failing to properly and timely delete the inaccurate information from Drake's credit files despite being unable to verify the accuracy of the information and/or being provided with proof of its inaccuracy; (d) willfully and negligently continuing to furnish and disseminate inaccurate information and derogatory credit account and other information despite having knowledge of its inaccuracy and/or inability to be verified; and (e) willfully and negligently failing to communicate that a disputed debt is disputed, in violation of 15 U.S.C. §1681e(8).

175. The conduct of Experian was a direct and proximate cause, as well as a substantial factor, in bringing about the serious injuries, actual damages and harm to Drake that are outlined more fully above and, as a result, Experian is liable to Drake for the full amount of statutory, actual and punitive damages, along with the attorneys' fees and the costs of litigation, as well as such further relief, as may be permitted by law.

**WHEREFORE,** Drake respectfully requests that this court enter judgment in her favor and against Experian for the following:

a. Actual Damages;

b. Punitive Damages;

c. Statutory damages pursuant to 15 U.S.C. §1681n;

d. Reasonable attorney's fees and costs of suit pursuant to 15 U.S.C. §1681o; and

e. Such addition and further relief as may be appropriate or that the interests of justice require.

## COUNT II – NEGLIGENCE AS TO DEFENDANT EXPERIAN

176. Drake incorporates by reference the allegations in ¶1-¶175 as though fully set forth.

177. Experian's negligence consists of the following:

a. Violating the FCRA as set forth above;

b. Failing to provide a proper and reasonable reinvestigation concerning the inaccurate information after receiving notice of the dispute from Drake;

c. Failing to provide prompt notice of the inaccurate information and Drake's dispute to creditors;

d. Failing to provide all relevant information provided by Drake regarding the dispute of the inaccurate information to creditor;

e. Failing to review and consider all relevant information submitted by Drake regarding the dispute of the inaccurate information;

f. Failing to delete or correct the inaccurate information from Drake's credit file after reinvestigation;

g.  Failing to note Drake's dispute of the inaccurate information on the initial consumer reports;

h.  Failing to timely and properly investigate the inaccurate information after receiving notice of the dispute from Drake;

i.  Failing to employ and follow reasonable procedures to assure maximum possible accuracy of Drake's credit report, information and file;

j.  Failing to properly and timely delete the inaccurate information from Drake's credit files despite being unable to verify the accuracy of the information and/or being provided with proof of its accuracy;

k.  Continuing to report the inaccurate information despite having knowledge of the inaccuracies and/or the inability to be verified;

l.  Continuing to rely upon verification from a source it had reason to know was unreliable; and

m.  Continuing to re-age and manipulate the dates in Drake's VLLA trade line to artificially lower Drake's credit score and to make Drake's VLLA trade line seem more recently delinquent then it really was to potential creditors.

178. As a result of Experian's conduct as mentioned above, Drake sustained and continues to sustain the losses and damages set forth above.

179. The conduct of Experian is a direct and proximate cause, as well as a substantial factor, in bringing about the serious injuries, damages and harm to Drake that are outlined more fully above and, as a result, Defendant Experian is liable to compensate Drake for the full amount of actual and compensatory damages, as well as such other relief, permitted by law.

**WHEREFORE,** Drake respectfully requests that this court enter judgment in her favor and against Experian for the following:

a.  Actual Damages;

b.  Punitive Damages;

c.  Statutory damages pursuant to 15 U.S.C. §1681n;

d.  Reasonable attorney's fees and costs of suit pursuant to 15 U.S.C. §1681o; and

e.  Such addition and further relief as may be appropriate or that the interests of justice require.

## COUNT III - VIOLATIONS OF FAIR CREDIT REPORTING ACT AS TO DEFENDANT EQUIFAX

180. Drake incorporates by reference the allegations in ¶1-¶179 as though fully set forth.

181. At all times pertinent hereto, Equifax was a "consumer reporting agencies" as that term is defined by 15 U.S.C. §1681a(b) and (f).

182. At all times pertinent hereto, Drake was a "consumer" as that term is defined by 15 U.S.C. §1681a(c).

183. At all times pertinent hereto, the above mentioned credit reports were "consumer reports" as that term is defined by 15 U.S.C. §1681a(d)

184. Pursuant to 15 U.S.C. §1681n and 15 U.S.C. §1681o, Equifax is liable to the Drake for engaging in the following conduct: (a) willfully and negligently failing to delete the inaccurate information from Drake's credit file after reinvestigation, in violation of 15 U.S.C. §1681i(a); (b) willfully and negligently failing to employ and follow reasonable procedures to assure maximum possible accuracy of Drake's credit report, information and file, in violation of 15 U.S.C. §1681e(b); (c) willfully and negligently failing to properly and timely delete the inaccurate information from

Drake's credit files despite being unable to verify the accuracy of the information and/or being provided with proof of its inaccuracy; (d) willfully and negligently continuing to furnish and disseminate inaccurate information and derogatory credit account and other information despite having knowledge of its inaccuracy and/or inability to be verified.

185. The conduct of Equifax was a direct and proximate cause, as well as a substantial factor, in bringing about the serious injuries, actual damages and harm to Drake that are outlined more fully above and, as a result, Equifax is liable to Drake for the full amount of statutory, actual and punitive damages, along with the attorneys' fees and the costs of litigation, as well as such further relief, as may be permitted by law.

**WHEREFORE,** Drake respectfully requests that this court enter judgment in her favor and against Equifax for the following:

    a.  Actual Damages;

    b.  Punitive Damages;

    c.  Statutory damages pursuant to 15 U.S.C. §1681n;

    d.  Reasonable attorney's fees and costs of suit pursuant to 15 U.S.C. §1681o; and

    e.  Such addition and further relief as may be appropriate or that the interests of justice require.

## COUNT IV – NEGLIGENCE AS TO DEFENDANT EQUIFAX

186. Drake incorporates by reference the allegations in ¶1-¶185 as though fully set forth.

187. Equifax's negligence consists of the following:

    a.  Violating the FCRA as set forth above;

b. Failing to provide a proper and reasonable reinvestigation concerning the inaccurate information after receiving notice of the dispute from Drake;

c. Failing to provide prompt notice of the inaccurate information and Drake's dispute to creditors;

d. Failing to provide all relevant information provided by Drake regarding the dispute of the inaccurate information to creditor;

e. Failing to review and consider all relevant information submitted by Drake regarding the dispute of the inaccurate information;

f. Failing to delete or correct the inaccurate information from Drake's credit file after reinvestigation;

g. Failing to timely and properly investigate the inaccurate information after receiving notice of the dispute from Drake;

h. Failing to employ and follow reasonable procedures to assure maximum possible accuracy of Drake's credit report, information and file;

i. Failing to properly and timely delete the inaccurate information from Drake's credit files despite being unable to verify the accuracy of the information and/or being provided with proof of its accuracy;

j. Continuing to report the inaccurate information despite having knowledge of the inaccuracies and/or the inability to be verified;

k. Continuing to rely upon verification from a source it had reason to know was unreliable; and

l.  Continuing to re-age and manipulate the dates in Drake's VLLA trade line to artificially lower Drake's credit score and to make Drake's VLLA trade line seem more recently delinquent then it really was to potential creditors.

188.  As a result of Equifax's conduct as mentioned above, Drake sustained and continues to sustain the losses and damages set forth above.

189.  The conduct of Equifax was a direct and proximate cause, as well as a substantial factor, in bringing about the serious injuries, damages and harm to Drake that are outlined more fully above and, as a result, Equifax is liable to compensate Drake for the full amount of actual and compensatory damages, as well as such other relief, permitted by law.

**WHEREFORE,** Drake respectfully requests that this court enter judgment in her favor and against Equifax for the following:

a.  Actual Damages;

b.  Punitive Damages;

c.  Statutory damages pursuant to 15 U.S.C. §1681n;

d.  Reasonable attorney's fees and costs of suit pursuant to 15 U.S.C. §1681o; and

e.  Such addition and further relief as may be appropriate or that the interests of justice require.

Respectfully submitted,

By:_____

   Steven Howell, Esquire
   Howell Law Firm
   619 Bridge Street
   New Cumberland, PA 17070
   (717) 770-1277 Phone
   (717) 770-1278 Fax
   hwllstvn@aol.com
   Supreme Court ID 62063
   Attorney for Plaintiff

## VERIFICATION OF COMPLAINT AND CERTIFICATION BY PLAINTIFF

I, Melinda S. Drake, depose and say as follows:

1. I am a Plaintiff in this civil proceeding.
2. I have read the above-entitled civil Complaint prepared by my attorney and I believe that all of the facts contained in it are true, to the best of my knowledge, information and belief formed after reasonable inquiry.
3. I believe that this civil Complaint is well grounded in fact and warranted by existing law or by a good faith argument for the extension, modification, or reversal of existing law.
4. I believe that this Civil Compliant is not interposed for any improper purpose, such as to harass any Defendant(s), cause unnecessary delay to any Defendant(s), or create a needless increase in the cost of litigation to any Defendant(s), named in the Complaint.
5. I have filed this civil complaint in good faith and solely for the purpose set forth in it.
6. I have provided my attorney with true and correct copies of each and every exhibit, which has been attached to this Complaint.
7. I have not altered, changed, modified, or fabricated the attached exhibits, except that some of the attached exhibits may contain some of my own handwritten notations.

Date: 9-13-17

Melinda S. Drake